IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANGEL ALCANTAR LOPEZ, an Oregon resident and United States citizen,<br><br>      Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF STATE, by and through HILLARY RODHAM CLINTON,<br><br>      Defendant. | 3:11-CV-1069-AC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER |

ACOSTA, Magistrate Judge:

*Introduction*

  Angel Alcantar Lopez applied for a United States passport and the United States Department of State (the "Department") denied his application because it deemed insufficient his proffered evidence of birth in the United States. Lopez claims he was born on April 28, 1978, in Bingen, Washington, a town located on the Washington bank of the Columbia River, just north and several miles east of the City of Hood River, which is located on the Oregon bank of the river. Lopez alleges his parents, Mexican citizens, were living in Bingen at the time while his father worked as a migrant farm laborer in the area. Lopez explains his parents could not afford

1   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

medical care or a hospital, and thus his birth occurred in the worker's cabin where his parents lived. His delivery was facilitated by a local midwife, known only as "Esperanza," and Kathern Frahs, a family friend and resident of Underwood, Washington, an unincorporated community located several miles west of Bingen. Other than the midwife, Frahs, and his mother, no other persons witnessed Lopez's birth, but Lopez asserts his father saw him later on the day he was born. At that time, Lopez's parents did not obtain a birth certificate documenting Lopez's birth in Washington.

Lopez grew up with his family in Northwest Portland and attended public school through graduation from Cleveland High School in June 1999. On March 11, 1984, Lopez was baptized at St. Patrick's Church in Portland, Oregon, and his baptismal certificate lists his date and place of birth as April 28, 1978, Bingen, Washington. On January 3, 1985, Lopez obtained a "Delayed Certificate of Birth" from the Washington Department of Social and Health Services. The 1985 certificate shows it was supported in part by an October 23, 1984 affidavit from Frahs. On April 29, 2009, Lopez filed a Petition to Establish Birth Record in the Superior Court for the State of Washington, Klickitat County. Lopez supported his petition in part with Frahs's October 16, 2008, signed affidavit attesting under oath to Lopez's birth in Bingen, Washington, on April 28, 1978. The state court granted Lopez's petition on June 17, 2009, and entered an order establishing that Lopez "was born on April 28, 1978, in Bingen, Klickitat County, Washington." The next month, on July 15, 2009, the State of Washington issued Lopez a second delayed birth certificate listing his place of birth as Bingen, Washington. Lopez asserts that prior to the events giving rise to his lawsuit, he and his family members believed him to be a U.S. citizen.

The Department alleges Lopez has failed to support his passport applications with evidence sufficient to show by a preponderance that he was born in the United States. The

2  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Department observes that Lopez filed five separate applications for a U.S. passport: December 30, 1996, January 17, 2007, October 26, 2007, July 22, 2009, and December 3, 2009. Other than the 1996 application, the Department denied Lopez's applications because it concluded that Lopez lacked sufficient documentation to show he was born in the United States.[1]    The Department cited several deficiencies in Lopez's evidence, primary of which was Lopez's Mexican registration of birth.  On June 13, 1978, Lopez's mother had registered his birth in Silao, Guanajuato, Mexico, the registration document reflecting that Lopez was born in Silao on April 28, 1978.    The Department also found inadequate Lopez's baptismal certificate and delayed birth certificates.  In its December 9, 2009, letter denying Lopez's final application, the Department explained that a delayed birth certificate, even if court-ordered, does not constitute primary evidence of birth in the United States.  In addition, the Department observes that Lopez's baptismal certificate had been obtained more than five years after the date Lopez alleges he was born in the United States, thus diminishing its probative value under State Department regulations.

Lopez filed this lawsuit on September 2, 2011, seeking a declaration from this court that he "is a United States Citizen and is entitled to proof of his citizenship in the form of a United States Passport[.]"  On July 31, 2012, Lopez's case was tried to the court, the parties agreeing that the only issue for the court to decide was whether Lopez was born in Bingen, Washington, on April 28, 1978. (Pls.' Trial Br. 5; Dfs.' Trial Br. 2.)  Both sides submitted exhibits and called witnesses to testify during trial.  A court-certified Spanish-language interpreter translated the

---

[1] The 1996 passport application was in Lopez's name but was accompanied by a photograph of Leonardo, one of Lopez's older brothers. In an April 14, 1998, sworn written statement given to a State Department security agent, Lopez admitted to allowing the older brother, a Mexican citizen, to use Lopez's name to obtain a U.S. passport.

3  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

questions and answers for Lopez's mother and father.  Following the trial, the parties submitted to the court their respective proposed Findings of Fact and Conclusions of Law, and the Department submitted supplemental briefing and affidavits.  Upon review and consideration of the pleadings, briefs, sworn testimony of witnesses, exhibits, and final arguments, the court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure.[2]

## FINDINGS OF FACT

1. Plaintiff Angel Alcantar Lopez is a resident of Portland, Oregon.

2. The parties have stipulated that Lopez was born on April 28, 1978.  (Tr. 15.)

3. Lopez's parents are Antonio Alcantar and Maria de los Angeles Lopez Bonilla.

4. Lopez's parents lived in the United States for a period of time before Lopez was born, first in California and then in Washington, and both were present the day he was born in Bingen, Washington.  (Tr. 114-115, 240.)  The testimony of Lopez's parents was consistent with their prior sworn affidavits attesting to these same facts.  (Ex. 17, pp. 30-36.)  Both parents described similar details about the worker's cabin in Bingen, Washington, in which they lived at the time Lopez was born.  (Tr. 116-17, 120-31, 240-41.)

5. Lopez's father, Antonio Alcantar, testified about events at issue that generally consistent with the testimony of other witnesses whose mental competency to testify the Department did not challenge.  The quality of his recollection appeared normal for a person his age recalling events that occurred almost 35 years earlier.  (Tr. 248-50.)

_____

[2]The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

4  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

6.   Lopez's parents have always told him he was born in Bingen, Washington.  (Tr. 18-20.)  No evidence was introduced during trial that Lopez's parents had ever told Lopez he was born someplace other than Bingen, Washington, including Mexico.

7.   Lopez's parents have always told other family members, including Lopez's siblings Leonardo Alcantar Lopez, Rosalinda Alcantar Lopez, and Juan Alcantar Lopez, that Lopez was born in Bingen, Washington.  (Tr. 179, 206, 214.)

8.   The common understanding, or reputation, among Lopez's family members, including family members in Mexico, is that Lopez was born in the United States.  (Tr. 33.)

9.   Lopez has three older brothers, Leonardo or "Leo," Reuben, and Liborio, who were born in Mexico.  (Tr. 32.)  Lopez has a younger brother, Juan, and a younger sister, Rosalinda, who were both born in the United States.  (Tr. 114.)

10.   Lopez's oldest brother Leonardo remembers meeting his mother and his brother Lopez, for the first time, when he was about five years old and his mother and Lopez came to visit the family in Mexico where Leonardo was living with his grandparents.  (Tr. 177-179.) Leonardo had been told by his grandmother, prior to that visit, that his parents were living in "El Norte," meaning the United States of America.  (Tr. 178.)  When Leonardo's mother and Lopez first visited him, Lopez was already a small baby rather than a newborn.  (Tr. 179-80.)

11.   Near the time Lopez was born, Lopez's mother received word that her father in Mexico was sick and that she should come home to visit him.  (Tr. 115.)

12.   Lopez was taken by his mother from the United States to Mexico in about May of 1978.  (Tr. 117, 177.)

13.   Lopez's mother's father, Bonifacio Lopez Rodriguez, died in Mexico on August 8, 1978.  (Ex. 3; Tr. 48-49.)

5  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

14. On January 3, 1985, the State of Washington issued a Delayed Certificate of Birth stating that Lopez was born in Bingen, Washington on April 28, 1978, to parents Antonio Alcantar and Maria Los Angeles-Lopez. (Ex. 1.) Antonio Alcantar, Lopez's father, signed the 1985 Washington birth certificate swearing under penalty of perjury the facts stated therein were true and correct. (*Id.*) Kathern Frahs also submitted an affidavit dated October 23, 1984, in support of Lopez's 1985 birth certificate. (*Id.*) The court finds the 1985 birth certificate and the Frahs' affidavit credible and highly probative. Both documents were executed close in time to Lopez's date of birth, when both witnesses' recollections still would have been relatively clear and specific. Furthermore, Alcantar signed the birth certificate under penalty of perjury and Frahs signed her affidavit under oath, indicating that each witness was aware of the solemnity of the statement they were making as well as the significant consequences to each of them if they were untruthful in their statement. There is no evidence in the record undermining these sworn statements. The court also finds the State of Washington's Delayed Certificate of Birth highly probative. The State of Washington issued the document pursuant to its formal procedures, which included a review to determine the validity of the birth certificate and affidavit. (*See* Ex. 1: "I hereby certify . . . that documentary evidence has been reviewed which substantiates the facts as set forth in the foregoing abstract.")

15. Lopez received a certificate of baptism from St. Patrick's Church in Portland, Oregon, indicating that he was born in Bingen, Washington, on April 28, 1978, and indicating that he was baptized on March 10, 1984. (Ex. 4; Tr. 28-29.) Kathern Frahs attended Angel's baptism and is designated on his baptismal certificate as his godmother. (Ex. 4; Tr. 120.) The court finds Lopez's baptismal certificate reliable and probative. Its content is consistent with other documentation of Lopez's birth issued or created during the same time period.

6  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

16.  Lopez's first communion was on April 16, 1988, also at St. Patrick's Church in Portland, Oregon.  (Ex. 4.)  He received childhood immunizations in Vancouver, Washington, between 1984 and 1987.  (Ex. 8; Tr 31.)  Lopez attended public schools in Portland, Oregon, starting in 1984 until he graduated from Cleveland High School in June of 1999. (Ex. 9 pp. 12-13.)  The court finds these records further corroborate witness testimony which described Lopez's childhood in the Portland, Oregon, metropolitan area.

17.  Lopez has lived in the NW Thurman neighborhood of Portland, Oregon, most of his life.  Lopez and his family have rented apartments there since at least the early 1980s, and for the last twenty years have rented a house, from Homer Medica.  (Ex. 16; Tr 21-26, 222.)  The court finds the longstanding and continuous residence of Lopez and his family in one neighborhood probative evidence in support of Lopez's assertion that he was born in the region.  (Tr. 26.)

18.  Homer Medica owns a grocery store in the NW Thurman neighborhood and has had regular, and often daily, contact with Lopez and his family for approximately 30 years.  (Tr. 21, 220-24.)  Medica testified that he met Lopez as a toddler.  (Tr. 232.)  Medica testified concerning the understanding and reputation of the Alcantar family in the neighborhood, as well as his own understanding, that Lopez and his younger brother Juan and sister Rosalinda all were born in the United States.  (Ex. 26; Tr. 230-32.)  No evidence at trial refuted Medica's testimony or suggested that Medica had heard from any source that Lopez was not born in the United States.

19.  Kathern Frahs provided credible affidavit testimony that Lopez was born in Bingen, Washington.  Frahs, a long-time family friend and long-time resident of Underwood, Washington, had close and sustained relationship with Lopez and his family, and she was Lopez's godmother.  (Ex. 18; Tr. 73-79, 117, 120, 129-30, 160, 165-66, 168, 181-82.)  She died

7  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

sometime after giving her October 2008 affidavit but before the Lopez filed this lawsuit (Tr. 259), and was not available to testify. Frahs signed two affidavits that were consistent with the story that she had always told Lopez about her role in his birth in Bingen. (Tr. 79-80.). Her first affidavit, signed in 1984, supported Lopez's 1985 Delayed Certificate of Birth issued by the State of Washington. (*See* Ex. 1, indicating "Supporting Affidavit" provided by Kathern C. Frahs on 10-23-84.) The court finds this affidavit credible evidence of Lopez's place of birth because it was accepted by the Washington State court system as sufficient evidence to support the issuance of a delayed birth certificate. Her second affidavit, signed in 2008, was filed in support of Lopez's Petition for Order to Establish Record of Birth, filed in Klickitat County Superior Court for the State of Washington. (Exs. 1, 18.) The court finds Frahs's 2008 affidavit credible evidence of Lopez's place of birth. Frahs gave the 2008 affidavit under oath for the express purpose of being filed in court to support Lopez's petition. Angela Winter, the paralegal who obtained Frahs's 2008 affidavit, credibly testified that Frahs understood the purpose for which her affidavit would be used, that she had to be truthful and accurate in her statements, and that she was "very clear" in her recollection of the facts. (Tr. 165-66.) Frahs's affidavit also is consistent with her October 23, 1984, affidavit submitted in support of Lopez's Delayed Certificate of Birth and her March 10, 1984, attestation on Lopez's baptismal certificate that she was present when Lopez was born in Bingen, Washington on April 28, 1978. The Department called no witness and introduced no evidence that called into question Winters's or Frahs's testimony or credibility, or that established that Frahs intentionally and repeatedly gave false testimony about the circumstances of Lopez's birth. (Tr. 265-266.) Accordingly, the court accepts as true Frahs's affidavit testimony that Lopez was born in Bingen, Washington.

8  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

20.  On June 17, 2009, the Klickitat County Superior Court for the State of Washington issued an order which declared Lopez's place of birth as Bingen, Washington. (Exs. 17, 22; Tr. 257-59.)  That order resulted in the State of Washington reissuing Lopez's Delayed Certificate of Birth on July 15, 2009.  (Ex. 2; Tr. 37.)

21.  Lopez is registered to vote in Multnomah County and has consistently held a United States Social Security card, an Oregon drivers license, and other indicia of U.S. citizenship. (Exs. 5, 6, 7; Tr. 37-38.)  Lopez traveled to Mexico in 2011 to be married, and on his Mexican Marriage License he listed his birthplace as Bingen, Washington and his citizenship as United States.  (Ex. 10; Tr. 39-43.)

22.  Leonardo testified at trial that in 1996 he used his own photograph but Lopez's birth certificate and biographical data to apply for a U.S. passport, without Lopez's permission.  (Ex. 105; Tr. 186-187.)  Leonardo acknowledged when deposed and when testifying at trial that as a naturalized citizen his admission of this conduct potentially exposed him to legal consequences. (Tr. 187-188, 190.)  The court finds credible Leonardo's testimony on this and other topics, especially considering that he knew his admission regarding his 1996 passport application would put him at risk of legal consequences.

23.  Lopez testified that he was not, at the time it was submitted, aware that his brother made a 1996 passport application in his name.  Lopez eventually become aware of the 1996 passport application and wrote to the Department in an attempt to address the potential consequences to him of Leonardo's actions.  (Tr. 67-69; Exs. 107, 108.)  Lopez testified credibly on this and related subjects.

24.  Lopez's mother, Maria de los Angeles Lopez Bonilla, is illiterate.  (Tr. 118, 150.)

25. While Bonilla was visiting her father in Mexico in 1978, she went to the authorities in Silao and registered Lopez's birth, which registration resulted in the generation of a Mexican birth certificate ("Acta de Nacimiento"), dated June 13, 1978, that lists Lopez's date of birth as April 28, 1978, and birthplace as Silao, Mexico. (Ex. 101; Tr. 118.) Bonilla testified at trial she informed authorities at the time of registering Lopez that he was born in the United States and that she registered Lopez's birth with Mexican authorities because she wanted him to have dual citizenship. (Tr. 118, 152.) Bonilla testified she did not fill out any forms or papers and did not receive a copy of the Mexican birth certificate at the time she registered Lopez's birth. (Tr. 153-54.)

26. While Bonilla was visiting Mexico in 1988, she went to the authorities in Silao and registered the birth of Lopez's younger brother Juan, which registration resulted in the generation of a Mexican birth certificate that lists Juan's birthplace as Silao, Mexico. (Ex. 12, p. 3.) In fact, Juan was born in Portland, Oregon, and he possesses a U.S. passport. (Tr. 214-15; Ex. 12, pp. 1, 2.)

27. While Bonilla was visiting Mexico in 1996, she went to the authorities in Silao and registered the birth of Lopez's younger sister Rosalinda, which registration resulted in the generation of a Mexican birth certificate that lists Rosalinda's birthplace as Silao, Mexico and date of birth as January 14, 1993. (Ex. 13, p. 3.) Rosalinda's Mexican birth certificate incorrectly states the date of her birth and place of her birth, as she was born on January 14, 1994, in Portland, Oregon. (Tr. 207, 210; Ex. 13, p. 1.) In fact, Rosalinda possesses a U.S. passport. (Tr. 210; Ex. 13, p. 2.)

28. The evidence at trial conclusively established that both Juan and Rosalinda were born in Portland, Oregon. The court finds that the Mexican birth certificates issued to them by

10 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

the authorities in Silao, Mexico, incorrectly state the birthplaces of both Juan and Rosalinda, and incorrectly state Rosalinda's date of birth. The court also finds that the Mexican birth certificate issued to Lopez by the authorities in Silao, Mexico, incorrectly state his birthplace as Silao, Mexico.

29. The court finds credible Bonilla's testimony that she registered the births of Lopez, Juan, and Rosalinda in Mexico after each child was born in the United States. She acted consistently with respect to each of her U.S.-born children by also registering each of their births in Mexico. Because she is illiterate Bonilla would not have recognized the errors contained in each child's Mexican birth certificates.

30. On May 13, 2011, Lopez filed an I-130 petition requesting that his wife, Alma Alcantar, a Mexican citizen, be classified for immigration as the wife of a United States citizen and approved for issuance of a visa for entry to the United States. (Ex. 27; Tr. 54-55.) Lopez filed the petition as a U.S. citizen and USCIS issued an I-797 Notice of Action approving Lopez's petition. (Ex. 27; Tr. 55.)

31. In filing the petition sponsoring his wife for permanent resident status, Lopez reasonably believed he was a United States citizen because he possessed a Washington State birth certificate, which had been reissued pursuant to the June 17, 2009, order of the Klickitat County Superior Court, State of Washington; because throughout his life his parents, family members, and family friends consistently described his birth as having occurred in the United States; and because he acted consistently with this belief by obtaining driver's licenses and a Social Security card, and registering as a voter.

32. Lynn Nguyen Ho, USCIS Assistant Center Director at USCIS's California Service Center, reviewed USCIS's computerized records of Lopez's I-130 petition file. (Declaration of

11 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Lynn Nguyen Ho (Dkt. No. 38-1) ¶ 3.)  Petitioners claiming U.S. citizenship "must show a birth or naturalization certificate, a citizenship certificate, or a passport."  (Ho Decl. ¶ 7.)  On May 13, 2011, Lopez submitted a petition requesting that his wife, Alma Alcantar, be classified for immigration as the wife of a U.S. citizen and be approved for issuance of a visa for entry to the United States.  (Ex. 27; Tr. 54-55.)  To support his petition, Lopez submitted a Washington State delayed birth certificate and affidavit of correction, issued July 15, 2009, to USCIS, and USCIS approved Lopez's petition on August 16, 2011 and forwarded the approved petition to the Department of State National Visa Center.  (Ho Decl. ¶¶ 14, 19.)  On May 8, 2012, Alma Alcantar received an immigrant visa from the Department through its consular office in Mexico, based on Lopez's U.S. citizenship, and she is now residing in the United States.  (Tr. 88-89, 104, 136.)  Lopez's Mexican birth registration was not among the file materials submitted in support of his Form I-130 petition.  (Ho Decl. ¶ 18; Declaration of Catherine E. Holt (Dkt. No. 38-2) ¶ 12.)

33.  USCIS is an agency within the U.S. Department of Homeland Security.  The Ho Declaration and the Holt Declaration show that USCIS and the Department coordinate and cooperate in matters of immigration and lawful residency of foreign citizens in the United States. This working relationship is further evidenced by each agency's respective websites:

http://www.travel.state.gov/visa/immigrants/immigrants_1340.html;

http://www.travel.state.gov/visa/immigrants/types/types_1309.html; and,

http://www.uscis.gov.[3]

---

[3] All websites last visited January 2, 2013.

34.  There is no witness testimony and, except for the Mexican birth certificate, no documentary evidence that Lopez was born in Mexico.

35.  The court finds credible each of the witnesses who testified at trial.

36.  The preponderance of the evidence indicates that Petitioner Angel Alcantar Lopez was born in the United States, in Bingen, Washington, on April 28, 1978.

## CONCLUSIONS OF LAW

1.  The court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

2.  All persons born in the United States and subject to the jurisdiction thereof are citizens of the United States.  U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1401(a).

3.  Any person who claims to be a United States citizen and is denied a "right or privilege . . . upon the grounds that he is not a national of the United States" may sue "for a judgment declaring him to be a national of the United States."  8 U.S.C. § 1503(a).

4.  In a claim under 8 U.S.C. § 1503, the court makes a *de novo* determination of citizenship.  *Vance v. Terrazas*, 444 U.S. 252, 256 (1980); *Richards v. Secretary of State, Dept. of State*, 752 F.2d 1413, 1417 (9th Cir. 1985).

5.  An applicant for a passport has the burden to establish that he or she is entitled to a passport by presenting proof of identity and citizenship.  *See* 22 C.F.R. §§ 51.23, 51.40.  Lopez, as the petitioner, bears the initial and the ultimate burden of proving his citizenship by a preponderance of the evidence.  *Reyes v. Neely*, 264 F.2d 673, 674 (5th Cir. 1959); *Beltran v. Rivera*, No. 2:10-CV-24288, 2012 WL 2675477, at *3 n.1 (S.D. Fla. July 6, 2012); *Ramirez v. Clinton*, No. 08–5770, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011); *Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.D.C. 1961).

13 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

6.  To meet his burden, Lopez must provide documentary evidence that he is a United States national.  22 C.F.R. § 51.41.  Primary evidence of nationality for a person born in the United States is an official birth certificate filed within one year of the date of birth.  *See* 22 C.F.R. § 51.42(a).  Alternatively, if an applicant's birth certificate is insufficient to qualify as primary evidence, secondary evidence "includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth."  22 C.F.R. § 51.42(b).  The Department's regulations are instructive but do not bind the court, and there is no list of specific documents that must be used.  A petitioner must simply demonstrate by a preponderance of the evidence that he was born in the United States.  *Ramirez v. Clinton*, No. 08–5770, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011); *Rivera v. Albright*, No. 99 C 328, 2000 WL 1514075, at *1 (N. D. Ill. Oct.11, 2000)).

7.  The Department's regulations permit petitioners to submit various forms of evidence to prove their U.S. citizenship.  While a contemporaneous birth certificate is the preferred form of evidence to establish citizenship, it is not the exclusive form of evidence the Department is willing to consider and accept regarding a petitioner's claim of U.S. citizenship, as the regulations make clear by specifying examples of various acceptable alternative forms of evidence.  From this the court concludes that the Department intends its regulations be considered in the context of the specific case, that each piece of evidence be evaluated for its authenticity and reliability, and that the determination whether a petitioner has met the preponderance burden be made on the totality of all the evidence submitted.

14 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

8. Lopez's evidence at trial was of a type contemplated in the Department's regulations as sufficient to establish citizenship. He produced his baptismal records, school records, and immunization records, as well as rental receipts confirming his parents' long-time residency in Portland. The authenticity and reliability of these documents were not challenged at trial. Of particular probative value is Lopez's baptismal record. (Ex. 4.) The record shows that in March 1984 both of Lopez's parents and Frahs, as Lopez's godmother, stated Lopez's place of birth as Bingen, Washington. Lopez's parents and Frahs made these representations long before any question had been raised whether Lopez was born in the United States. Put another way, in this case the baptismal record, one type of evidence the Department recognizes as acceptable proof of citizenship, is an especially reliable form of evidence because it was made at a time when no challenge to Lopez's citizenship had been asserted and it could not have been made for the purpose of resisting such a challenge. The court finds Lopez's baptismal record reliable and highly probative evidence of his citizenship.

9. Lopez also produced Frahs's October 16, 2008, sworn affidavit (Ex. 18) attesting to her presence at Lopez's birth in Bingen, Washington. Frahs's testimony concerning Lopez's birth in Washington, as set forth in her sworn affidavit and as told orally to Lopez and others, is admissible under FED. R. EVID. 804(b)(4)(B). First, Frahs is deceased and thus was unavailable for trial. Second, the evidence was sufficient to establish that at the relevant time (the time period including Lopez's birth), Frahs was so intimately associated with Lopez and his family that her testimony is likely to be accurate.

10. Frahs's affidavit also is reliable and probative. Under the Department's regulations, witness affidavits are an acceptable form of evidence of citizenship. The Department does not challenge the authenticity of Frahs's affidavit but only its reliability, but it failed to support this

15 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

challenge. First, it presented no evidence to impeach the affidavit. Instead, the Department merely questioned whether Frahs's affidavit was the product of an altruistic "good deed" on her part, which resulted in its contents being "fabricated" in whole or in part. (Tr. 263-64.) This argument could be made against any affidavit submitted to support a petitioner's claim of U.S. citizenship, yet the Department's regulations expressly state witness affidavits are proper evidence of citizenship. The court concludes that witness affidavits are reliable sources of evidence regarding a petitioner's citizenship and cannot be discounted or disregarded on mere speculation about the affiant's motive for making the affidavit, particularly when the affidavit otherwise appears genuine and the witness appears competent to testify to the matters therein. *See Kouanchao v. U.S. Citizenship and Immigration Services*, 358 F. Supp. 2d 840, 842 (D. Minn. 2005) (finding reliable delayed birth certificate in part because the supporting witnesses' certifications were "unimpeached" by the government). Second, the Department did not object to or refute the testimony of Angela Winter, a paralegal who met with Frahs at least twice for the purpose of preparing Frahs's 2008 affidavit. Winters observed that Frahs understood her affidavit would be used in court, that she had to be truthful and accurate in her statements, and that Frahs was "very clear" in her recollection of the facts. (Tr. 165-66.) Winters's testimony further supports the reliability of Frahs's 2008 affidavit.

11. Frahs's 2008 affidavit also is reliable evidence under the regulations because it is supported by Frahs's two prior consistent statements that Lopez was born in Bingen, Washington. As discussed above, Frahs stated in Lopez's 1984 baptismal certificate that Lopez was born in Bingen, Washington. But Frahs also submitted an affidavit in October 1984 in support of Lopez's parents' first request for a Washington State delayed birth certificate for Lopez. (Ex. 1, p. 1.) Effectively, the Department's challenge to Frahs's 2008 affidavit is a

16 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

charge of recent fabrication, and Frahs's statement in Lopez's 1984 baptismal certificate and her 1984 affidavit thus are admissible and probative on this point as prior consistent statements offered to rebut a claim of recent fabrication. *See* FED. R. EVID. 801(d)(1)(B)(prior consistent statement admissible to "rebut an express or implied charge that the declarant recently fabricated [testimony] or acted from a recent improper influence or motive in so testifying[.]"). For this additional reason, the court concludes that Frahs's affidavit is reliable and probative evidence of Lopez's citizenship under the regulations.

12. A Mexican birth certificate creates a presumption that the person is an alien. *Rivera v. Albright*, No. 99 C 328, 2000 WL 1514075, at *1 (N. D. Ill. Oct.11, 2000), citing *United States ex rel. Rongetti v. Neelly*, 207 F.2d 281, 284 (7th Cir. 1953). This presumption continues until plaintiff proves the contrary. *See Corona-Palomera v. INS*, 661 F.2d 814, 818 (9th Cir.1981). A delayed birth certificate is given "far less weight" than a contemporaneous birth certificate, which is almost conclusive. *Liacakos v. Kennedy*, 195 F. Supp. 630, 632 (D.D.C. 1961).

13. Lopez produced evidence at trial sufficient to overcome the presumption of alienage created by the Mexican birth certificate. At trial Lopez's mother, Bonilla, provided a credible explanation for the existence of the Mexican birth certificate and credible testimony regarding the circumstances giving rise to its creation. Her explanation is consistent with registering Lopez's younger brother, Juan, and his younger sister, Rosalinda, with Mexican authorities in the same town in Mexico where she had registered Lopez. Evidence conclusively established that both of Lopez's younger siblings were born in the United States and that after they were born Bonilla registered each birth with Mexican authorities. This consistent pattern of registering in Mexico, at the same location, the births of her U.S.-born children corroborates

17 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Bonilla's explanation for the existence of Lopez's Mexican birth certificate.  Furthermore, the evidence at trial established that the Mexican birth certificates of Juan and Rosalinda each contained errors, most important of which were the misstatements that each was born in Mexico, just as Lopez's Mexican birth certificate also states; the evidence at trial conclusively established that both Juan and Rosalinda were born in the United States.  This evidence further undermines the reliability of Lopez's Mexican birth certificate and rebuts its presumption of alienage.

14.    Lopez produced evidence at trial sufficient to give his delayed birth certificates probative evidentiary value.  Lopez obtained two delayed birth certificates, the first in January 1985 and the second in June 2009.  At the time Lopez's parents obtained his 1985 delayed birth certificate there was no legal challenge to Lopez's status as a U.S. citizen.  The Department did not assert and no evidence at trial suggested that Lopez's parents obtained the 1985 certificate in response to a claim that Lopez was born in Mexico or in anticipation of a legal challenge to Lopez's U.S. citizenship.  Bonilla credibly explained the reason no birth certificate issued contemporaneous with Lopez's birth:  the family could not afford a doctor, could not afford to give birth in a hospital, and thus Lopez was born in the workers shack in Bingen, Washington, where the family lived at the time.  Based on her demeanor at trial and her manner of testifying, the court finds Bonilla's testimony on this and the other topics on which she testified highly credible.

15.  The Court factors into its analysis that a petitioner's parents have always told him he was born in the United States.  *See Ramirez v. Clinton*, No. Civ. 08-8770-DSD/JSM, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011) (finding similar statements were admissible and probative of a plaintiff's place of birth); *Beltran v. Rivera*, No. 2:10-CV-24288, 2012 WL 2675477, at *3 n.2 (S.D. Fla. July 6, 2012) (citing *Ramirez* for same).  *See also* FED. R. EVID.

18 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

804(b)(4)(B) (when a declarant is unavailable, her statement concerning the birth of "another person . . . if the declarant was related to the person by blood, adoption or marriage" is not hearsay). Additionally, the court considers reputation among the petitioner's family and in the community that he or she was born in the United States. *United States v. Jean-Baptiste*, 166 F.3d 102, 110 (2d Cir. 1999) ("[T]here is a special need for this type of evidence," because, as here, "[o]ther evidence of family matters is frequently unavailable, and it is likely that these matters have been sufficiently inquired about and discussed with persons who have personal knowledge so that a trustworthy consensus has been reached."). Statements of family members about matters of family history are "generally presumed to be truthful." *U.S. v. Palomares-Munoz*, No. 00-50216, 2001 WL 219951, at **1 (9th Cir. 2001), citing FED. R. EVID. 803(19) ("a reputation among a person's family . . . or among a person's associates in the community . . . concerning the person's birth . . ." is not hearsay).

16. At trial the evidence was uniform that Lopez's parents, his siblings, his godmother, and the family's friends consistently told Lopez and acknowledged among themselves he was born in the United States. Each witness who so testified was credible on this point and each identified the source of their information -- either personal knowledge or long familiarity with the family -- about Lopez's place of birth. There was no evidence at trial that Lopez had been told by anyone he was born in Mexico and no evidence to reasonably suggest that any of the witnesses were untruthful on this point. The court rejects the Department's contention that it should find the testimony of Lopez's family members not credible because they are "interested witnesses" and "potentially biased." Nothing in the witnesses' demeanor or testimony reasonably suggested that any of them were being untruthful in their testimony. The single fact of a familial relationship cannot by itself be enough to undermine the credibility of these

19 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

witnesses' testimony, as that would effectively nullify Federal Rule of Evidence 803(19), which recognizes as admissible evidence to establish a person's place of birth the testimony of the person's family. Thus, Lopez's testimony that his parents, relatives, and family friends have always told him that he was born in the United States, as well as the corroborating testimony of his siblings and friends, further supports his and his parents' statements that he was born in the United States, and is credible and probative on this point.

17. Lopez's father is legally competent to give admissible testimony. The court concludes that his trial testimony is admissible and probative, and was credible, on the subjects to which he testified.

18. The court finds reliable and probative Lopez's 1985 and 2009 delayed birth certificates but does not find them conclusive proof that Lopez was born in the United States. Lopez cites REV. CODE WASH. 70.58.130 for the proposition that under Washington law, a copy of the birth certificate that is certified by the state registrar is "prima facie evidence of the facts stated therein," and he argues his delayed birth certificate thus should be accorded Full Faith and Credit under 28 U.S.C. § 1739. The Western District of Texas recently addressed this same argument and its analysis accurately reflects the proper evidentiary treatment of delayed birth certificates:

> Petitioner also argues that she is entitled to judgment on the pleadings because the Order by which the Texas judge entered her delayed birth certificate is entitled to full faith and credit under the applicable statute. Under the Full Faith and Credit statute, the Texas birth certificate "shall have the same full faith and credit in every court and office within the United States" as it would receive in a Texas court. 28 U.S.C. § 1739; *see also Mah Toi v. Brownell,* 219 F.2d 642, 643 (9th Cir. 1955). Under Texas law, a copy of a birth certificate "that is certified by the state registrar is prima facie evidence of the facts stated in the record." Tex. Health & Safety Code Ann. § 191.052 (2010). This means that even affording it full faith and credit, Petitioner's delayed Texas birth certificate may be rebutted by other evidence and is not conclusive proof of her Texas birth

20 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

or United States citizenship. *See Tindle v. Celebrezze,* 210 F. Supp. 912 (D. C. Cal. 1962) (finding a delayed birth certificate issued by a Texas court was not conclusive evidence of the Plaintiff's age). Thus, Petitioner's Full Faith and Credit argument fails and she is not entitled to a judgment on the pleadings on this basis.

*De La Cruz v. Clinton*, No. A–11–CV–675–AWA, 2012 WL 1941373, at *3-4 (W.D. Tex. May 29, 2012). *See also Mah Toi v. Brownell,* 219 F.2d 642, 643 (9th Cir. 1955) (rejecting delayed birth certificate as conclusive proof of birth under the Full Faith and Credit statute). For the reasons states above, the court finds the evidence supporting Lopez's delayed birth certificates reliable and, thus, finds that both certificates are probative evidence that Lopez was born in the United States.

19.  The court finds that USCIS's approval of Lopez's I-130 petition for immigration on behalf of his wife is evidence that USCIS and, thus, the Department, considered Lopez's 2009 Delayed Birth Certificate probative evidence of Lopez's U.S. citizenship. First, the relationship and cooperation in the immigration process of USCIS and the U.S. Department of State are evidenced by the Ho Declaration and the Holt Declaration and further documented on each agency's official websites, and that information is admissible under FED. R. EVID. 902(5). Second, the evidence at trial established that for a USCIS I-797 Notice of Action to issue, USCIS must first determine that the I-130 petitioner is a U.S. citizen. The Department confirmed that on August 16, 2011, Lopez obtained an I-797 Notice of Action allowing his wife to live in the United States as the spouse of a U.S. citizen. Thus, USCIS used Lopez's delayed birth certificate to determine he was a U.S. citizen, a determination adopted by the Department when it issued the I-797 Notice of Action.

20.  The court rejects the Department's argument that approval of the Lopez's I-130 petition does not imply Lopez is a U.S. citizen. USCIS based its approval of Lopez's I-130

21 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

petition on Lopez's 2009 delayed birth certificate, the same document the Department argues should receive no weight in part because "given the uncontested nature of the proceeding before the Superior Court, its findings are entitled to little, if any, evidentiary weight." (Dfs.' Trial Br. at 8.)  The evidence establishes that USCIS itself considered Lopez's Washington State delayed birth certificate sufficient evidence of his U.S. citizenship to support approval of his I-130 petition seeking his wife's admission to the United States as the immigrant spouse of a U.S. citizen; clearly, USCIS relied on that document to recommend to the Department that Lopez's wife be issued an I-797 Notice of Action.  The court also rejects the Department's assertion that the I-130 approval lacks evidentiary significance because Lopez's Mexican birth certificate, a document which the Department implies would be an indicator of possible fraud, was not in Lopez's I-130 file.  The Department does not argue and neither Ho nor Holt state in their respective declarations that had Lopez's Mexican birth certificate also been submitted with his 2009 Washington State delayed birth certificate, USCIS would have investigated the petition further or denied Lopez's I-130 petition outright.  Rather, the Department's evidence is simply that Lopez's Mexican birth certificate was not included with his petition.  Neither Ho nor Holt state that USCIS considers a Mexican birth certificate an indicator of fraud or that it always investigates I-130 petitions that are filed with a foreign birth certificate.  The only evidence on this topic the general statement that USCIS investigates I-130 petitioners when it finds "fraud indicators," but those indicators are never identified or defined.  (Holt Decl. ¶ 9.)  The court concludes there is no reason to reject USCIS's I-130 approval and the Department's subsequent

I-797 Notice of Action as evidence that USCIS and, thus, the Department, considered Lopez's 2009 Delayed Birth Certificate probative evidence of Lopez's U.S. citizenship.[4]

    21.  Viewing the evidence as a whole, the court concludes that Lopez has met his burden to show by a preponderance of the evidence that he was born in the United States.

    22.  Angel Alcantar Lopez is a United States citizen.

    23.  Having established he was born in the United States and is a United States citizen, Lopez is entitled to a United States passport.

**ORDER**

    The court having found that plaintiff Angel Alcantar Lopez has established that he was born in the United States and is a United States citizen entitled to a United States passport, the court HEREBY ORDERS that the Department of State shall issue to Lopez a United States passport as soon as practicable but not later than ninety (90) days of the date of entry of this Order.

    IT IS SO ORDERED.

    DATED this _____9th_____ day of January, 2013.

                              JOHN V. ACOSTA
                           United States Magistrate Judge

---

[4] The court notes that it would find Lopez has met his burden of proof here even if the court did not consider the I-130 approval and I-797 Notice of Action.

23 FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER